Case 8:24-cr-00074-FWS   Document 1   Filed 06/10/24   Page 1 of 9   Page ID #:1

F I L E D
CLERK, U.S. DISTRICT COURT
06/10/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>PHILIP FREDERICK CAMINO,<br><br>　　　　Defendant. | No. 8:24-cr-00074-FWS<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 982: Criminal Forfeiture] |

The United States Attorney charges:

[18 U.S.C. § 1349]

A.　INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.　Defendant PHILIP FREDERICK CAMINO was a Canadian citizen legally residing in the Central District of California.

2.　Defendant CAMINO controlled 13050Sushi, LLC; Stout Palm Springs, LLC; Stout Cupertino, LLC; Stout Bardstown, LLC; Camino Industries, LLC; 1071 Glendon Partners; 672 LA, LLC; EB

Venice, LLC; and Stout Four, LLC, which were located within the Central District of California (collectively the "California Entities").

3. Co-Conspirator-1 controlled Squabble, LLC; Healthy Body Solutions, LLC; and Healthy Lawn Solutions, LLC and Co-Conspirator-2 controlled Nucleon, LLC, which were all located in Arizona (collectively the "Arizona Entities").

THE PAYCHECK PROTECTION PROGRAM

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). PPP loan proceeds were required to be used by the business to pay certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities.

5. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. Such certifications required the applicant to affirm that "[t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage interest

payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules.  The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

6. In the PPP loan application, the applicant was required to state, among other things, the business's: (a) average monthly payroll expenses and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses, including federal tax filings and bank account records.

7. A small business's PPP loan application would be received and processed by a participating lender approved by the Small Business Administration ("SBA").  If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

/ / /

/ / /

/ / /

THE ECONOMIC INJURY DISASTER LOAN PROGRAM

8.  The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

9.  The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

10. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

11. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA.

12. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as

debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

REVELANT LENDING INSTITUTION

13. Lender A is an approved SBA lender of PPP loans and located in Laguna Hills, California, within the Central District of California.

B.   THE OBJECT OF THE CONSPIRACY

14. Beginning no later than in or around April 2020 and continuing until at least in or around April 2021, in Orange County, within the Central District of California, and elsewhere, defendant CAMINO, Co-Conspirator-1, and Co-Conspirator-2 conspired with one another and with others known and unknown to the United States Attorney to commit wire fraud, in violation of Title 18, United States Code, Section 1343, in connection with a fraudulent PPP and EIDL loan scheme.

C.   THE MANNER AND MEANS OF THE CONSPIRACY

15. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

   a.   Defendant CAMINO, using the California Entities and the Arizona Entities, submitted, and caused to be submitted, false and fraudulent applications to the SBA and lending institutions for PPP and EIDL loans (collectively the "PPP and EIDL Applications").

   b.   In the PPP and EIDL Applications, defendant CAMINO made, and caused to be made, false and fictitious statements and provided falsified documents to the SBA and the lending institutions, including inflating the number of

employees to whom were paid wages, providing fictitious federal tax forms that were never filed with the Internal Revenue Service, and falsely certifying that the loan proceeds would be used for permissible business purposes.

   c. Defendant CAMINO electronically submitted, and caused to be submitted, the fictitious statements and falsified documents to the SBA and the lending institutions in support of the fraudulent PPP and EIDL Applications through interstate wires.

   d. In reliance on defendant CAMINO's material false and fraudulent statements and concealment of material facts in the PPP and EIDL Applications, the SBA and lending institutions approved and funded the PPP and EIDL loans, and thereafter transferred the loan proceeds into bank accounts that defendant CAMINO controlled.

   e. Defendant CAMINO used a majority of the fraudulently obtained PPP and EDIL loan proceeds for expenses prohibited under the requirements of the PPP and EIDL programs.

   f. In return for use of the Arizona Entities in the PPP and EIDL Applications, defendant CAMINO paid Co-Conspirator-1 kickback payments using the PPP and EIDL loan proceeds.

 16. As a result of the conspiracy above, defendant CAMINO submitted over 20 fraudulent PPP and EIDL Applications from which defendant CAMINO fraudulently obtained over $4 million in PPP and EIDL loan proceeds from the SBA and lending institutions.  Using those proceeds, defendant CAMINO paid Co-Conspirator-1 over $100,000 for his role in the scheme.

B.  OVERT ACT

17.  In furtherance of the conspiracy and to accomplish its object, defendant CAMINO committed the following overt act within the Central District of California: On or about June 23, 2020, defendant CAMINO sent an email to Lender A containing false documentation to support a $144,270 fraudulent PPP loan application on behalf of Nucleon LLC, a company controlled by Co-Conspirator-2.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.  Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offense set forth in this Information.

2.  The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

*/s/ Mack E. Jenkins*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

ANNE C. GANNON
Assistant United States Attorney
Chief, Santa Ana Branch Office

JENNIFER L. WAIER
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office